UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 13-616 JGB (SPx) | Date | April 28, 2017 |
| Title | *Mario Alberto Garcia v. County of Riverside et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order: (1) GRANTING in Part and DENYING in Part Defendants' Motion for Judgment on the Pleadings (Dkt. No. 78); and (2) VACATING the May 1, 2017 Hearing (IN CHAMBERS)

    Before the Court is Defendants' Motion for Judgment on the Pleadings. (Dkt. No. 78.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After consideration of the papers filed in support of, and in opposition to, the Motion, the Court GRANTS in Part and DENIES in Part Defendants' Motion.

## I.     BACKGROUND

    This matter comes before the Court with a lengthy history. Mario Alberto Garcia ("Plaintiff") initiated this action on April 5, 2013 on behalf of himself and all others similarly situated against the County of Riverside, the Riverside County Sheriff's Department, the County of Los Angeles, the Los Angeles County Sheriff's Department, and Sheriff Lee Baca ("Baca"). (Dkt. No. 1.) Pursuant to Plaintiff's request, the Clerk subsequently entered judgment against the County of Riverside and the Riverside County Sheriff's Department. (Dkt. No. 22.) Next, the case went through two rounds of motions to dismiss, after which Defendants appealed this Court's order denying their second motion to dismiss. (Dkt. No. 48.) The Ninth Circuit then affirmed this Court's finding that Baca was not entitled to qualified immunity or quasi-judicial immunity from Plaintiff's Fourteenth Amendment claim, and that neither the County of Los Angeles ("the County") nor the Los Angeles Sheriff's Department ("LASD") could claim state-law statutory immunity from Plaintiff's two state causes of action. ("Opinion," Dkt. No. 66.)

This leaves Plaintiff's Third Amended Complaint, filed October 23, 2013, as the operative complaint. ("TAC," Dkt. No. 50.) The TAC asserts three claims: (1) violations of Section 1983 for wrongful incarceration; (2) violations of the California Constitution for wrongful incarceration; and (3) false imprisonment. He asserts his Section 1983 claim against Baca, the County, and LASD, but asserts his second and third claims against the latter two only.

As for the substance of the allegations, the Court has detailed them in its previous orders and summarizes them briefly as follows. On November 18, 1994, the Los Angeles Superior Court issued a felony bench warrant for "Mario Garcia," whose full name is Mario Loya Garcia ("Mario L. Garcia"). (TAC ¶ 45.) LA County created a warrant entry within the computer-based warrant systems for Los Angeles County and the state, thereby alerting agencies outside Los Angeles County to the existence of the warrant. (Id.) Plaintiff contends that LA County knew Mario L. Garcia's fingerprint-based identifiers, namely his state "CII number," his county "LA Main number," and his middle name, but failed to include that information in the warrant entries. (Id. at ¶ 46.) The resulting warrant described Mario L. Garcia using only his first and last name, date of birth, height, weight, ethnicity, eye color, and hair color. (TAC, Exh. A.)

On November 26, 2012, a police officer from the Riverside County Sheriff's Department ("RCSD") stopped Plaintiff while he was driving his truck and arrested him for driving under the influence. (Id. at ¶ 47.) Plaintiff was booked into an RCSD jail on misdemeanor charges pursuant to his DUI arrest. (Id.) During the course of booking, RCSD personnel queried the state warrant database and discovered the felony bench warrant for Mario L. Garcia. (Id. at ¶ 48.) However, LASD personnel did not forward information on Mario L. Garcia's CII or LA Main numbers or his middle name. (Id. at ¶ 49.) RCSD matched Plaintiff to the Mario L. Garcia warrant, informing him that he would be booked on the no-bail felony warrant. (Id. ¶ 51.)

Plaintiff alleges that his experience is far from unique, and asserts that, in the last five years, "LASD records show that as many as 2,000 prisoners were, in fact, wrongly jailed on warrants meant for others." (Id. at ¶ 57.) He further contends that Baca was aware that the LASD was "routinely imprisoning innocent people on warrants describing different persons," and yet took no steps to remedy the situation. (Id. at ¶ 58.)

Defendants' Motion now seeks adjudication of three issues raised by Plaintiff's claims: (1) whether the California Constitution authorizes a stand-alone claim for damages; (2) whether LASD is a redundant or superfluous defendant; and (3) whether Plaintiff has alleged sufficient facts to assert a claim against Baca in his individual capacity. ("Motion," Dkt. No. 78.)[1] Plaintiff

---

[1] Together with their Motion, Defendants also filed a Request for Judicial Notice. ("RJN," Dkt. No. 79.) The request asks that the Court take judicial notice of a 2014 decision by Central District Court Judge Stephen V. Wilson. (RJN at 2-3.) The Court finds that this is a proper subject of judicial notice. The order is in the public record and its existence is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; see also United States v. S. California Edison Co., 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004) ("Federal courts may take notice of proceedings in other courts,

filed his Opposition on February 27, 2017. ("Opp'n," Dkt. No. 86.) Defendants filed their Reply on March 6, 2017. ("Reply," Dkt. No. 90.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

"Analysis under Rule 12(c) is substantially identical to analysis under [Federal Rule of Civil Procedure 12(b)(6)] because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). While a complaint "need not contain detailed factual allegations" to survive a Rule 12(b)(6) motion, "it must plead enough facts to state a claim to relief that is plausible on its face." Cousins v. Lockyer, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted).

A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989). However, the mere fact that a motion is couched in terms of Rule 12(c) does not prevent the district court from disposing of the motion by dismissal rather than

---

both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.") (internal citations omitted). Accordingly, the Court GRANTS Defendants' Request for Judicial Notice.

judgment. Sprint Telephony PCS, L.P. v. Cty. of San Diego, 311 F. Supp. 2d 898, 903 (S.D. Cal. 2004). Courts have discretion to grant Rule 12(c) motions with leave to amend, or to grant dismissal on a 12(c) motion, in lieu of judgment, on any given claim. Estate of Angel Lopez ex rel. Lopez v. Torres, No. 15-CV-0111-GPC-MDD, 2015 WL 6394174, at *3 (S.D. Cal. Oct. 21, 2015).

### III.     DISCUSSION

As the Court noted above, Defendants seek adjudication of three issues. The Court addresses each in turn.

**A.     Whether Article I, Section 13 of the California Constitution authorizes stand-alone damages claims.**

A counterpart to the Fourth Amendment, Article 1 Section 13 of the California Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." Cal. Const. art. I, § 13. Plaintiff asserts that this right was violated because "official and reliable law enforcement information . . . excluded Plaintiff and class members as the subjects of the warrants on which they were incarcerated." (TAC ¶ 65.)

Defendants argue, however, that Section 13 does not give rise to a stand-alone claim for damages, noting that California courts have been reluctant to recognize a damages remedy arising out of provisions of the California Constitution. (Motion at 2.) In response, Plaintiff traces the pertinent common law history, arguing that the prohibition against unlawful searches and seizures originated in the Magna Carta, which provided a damage remedy for the victims of unlawful searches at common law. (Opp'n at 15.) Additionally, Plaintiff argues that, under the analytical framework of Katzberg v. Regents of the University of California, 29 Cal. 4th 300 (2002), the Court must consider whether a damages remedy is warranted based on the adequacy of existing remedies—and that here, Plaintiff's alternative causes of action do not provide him with adequate remedies because the federal cause of action offers defendants qualified immunity and the false imprisonment claim does not provide for attorney's fees. (Id. at 16.)

Defendants counter that whether English common law recognized a right to damages for unreasonable searches and seizures is irrelevant without a showing that *California intended to adopt the English common law* with respect to illegal searches and seizures. (Reply at 5.) Moreover, they argue that the statutory language and legislative history both weigh against recognition of a damages claim, as does the fact that Plaintiff may recover attorney's fees under his federal cause of action. (Reply at 6.)

In light of the Parties' attacks on the persuasiveness of the other's authorities, the Court conducts its own examination of the legal precedent. As both Parties concede, no California state court seems to have addressed the specific issue of whether Section 13 gives rise to a stand-alone

claim for damages. To the extent that California court decisions provide any guidance on the question, the Court addresses the authorities in more detail below.

First, as both Parties acknowledge, the California Supreme Court in <u>Katzberg v. Regents of Univ. of California</u>, 29 Cal. 4th 300, 303 (2002) laid out the two-step inquiry for determining the existence of a damages action. Specifically, <u>Katzberg</u> explained that courts must "inquire whether there is evidence from which [the court] may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation." 29 Cal. 4th at 317. In doing so, courts may consider "the language and history of the constitutional provision at issue, including whether it contains guidelines, mechanisms, or procedures implying a monetary remedy, as well as any pertinent common law history." <u>Id.</u> If there is no affirmative intent to authorize or deny a damages action, the court must then undertake a "constitutional tort" analysis, considering various factors such as "whether an adequate remedy exists, the extent to which a constitutional tort action would change established tort law, and the nature and significance of the constitutional provision." <u>Id.</u> If the factors "militate against" a constitutional tort, the inquiry ends; but if the factors favor such a tort, the court must also consider "any special factors counseling hesitation." <u>Id.</u>

In <u>Katzberg</u> itself, the court considered whether Section 7 of the California Constitution—containing the due process protection—implied a right to seek damages. However, the court found "no basis" upon which to recognize a constitutional tort action, noting: that there was no evidence of an intent to confer a right to damages in the provision's legislative history; that the plaintiff had a range of available remedies outside of Section 7; that tort law does not contemplate damages actions to remedy asserted violations of due process liberty interests; and that, while the due process right was "fundamental," the relative importance of the right did not outweigh those factors weighing against recognition of a damages right. <u>Id.</u> at 318, 326-28.

In its discussion, however, the California Supreme Court suggested that the outcome would have been different with regard to the rights flowing to a victim of an illegal search and seizure. Specifically, the court distinguished the due process provision at issue from a search and seizure provision, noting that the prohibition against unlawful searches and seizures originated in the Magna Carta and provided a damage remedy for the victims of unlawful searches at common law. <u>Id.</u> at 322-23. The legislative history of search and seizure protection—unlike that of due process—therefore implied a right to damages. <u>Id.</u> However, the court's discussion—which addressed a decision by a New York court finding a damages remedy under the New York Constitution—noted that the drafters of the New York Constitution had expressly endorsed and accepted the English common law rule. <u>Id.</u>

District courts have subsequently reached different conclusions as to <u>Katzberg</u>'s implication for the right to a damages remedy in the context of Section 13. On one side, many district courts appear to have adopted <u>Katzberg</u>'s general reasoning in denying the right to damages. <u>See, e.g.</u>, <u>Roy v. Cty. of Los Angeles</u>, 114 F. Supp. 3d 1030, 1043 (C.D. Cal. 2015) ("Finding no evidence of an intent to authorize or deny a damages action, nor any factors

strongly favoring the recognition of a constitutional tort, the Court concludes that article I, Section 13 does not confer an action for money damages."); Brown v. Cty. of Kern, No. 1:06-CV-00121OWWTAG, 2008 WL 544565, at *17 (E.D. Cal. Feb. 26, 2008) ("Plaintiff cannot bring a damages claim directly under Article I, Sections 7 or 13 of the California Constitution, in part because alternative statutory and/or common law causes of action are available to redress his grievances."); Manning v. City of Rohnert Park, No. C 06-03435 SBA, 2007 WL 1140434, at *1 (N.D. Cal. Apr. 17, 2007) ("Neither the plain language of article I, section 13, nor the available legislative history indicate an intent on behalf of the California Legislature to permit the recovery of monetary damages for its violation."); Rendon v. Fresno Police Dep't, CV No. 05–00661, 2006 WL 2694678 OWW, at *21–22 (E.D. Cal. Sept. 18, 2006) ("According to Katzberg, Plaintiff cannot bring a damages claim under §§ 7 or 13 of the California Constitution, in part because alternative statutory and/or common law causes of action are available to redress his grievance."); Craft v. Cty. of San Bernardino, No. EDCV 05-359 -SGL, 2006 WL 4941829, at *3-4 (C.D. Cal. Mar. 23, 2006) ("Defendants next assert that plaintiffs cannot bring a suit for monetary damages for a violation of sections seven or thirteen to article one to the California Constitution. On this point, defendants are on firm footing as the California Supreme Court has held litigants cannot bring a damage claim directly under those sections to the California Constitution, in part because alternative statutory and/or common law causes of action remain available to redress such grievances.").

On the other hand, a handful of decisions from the Central District have relied on Katzberg to reach the opposite conclusion. See, e.g., OSJ PEP Tennesse LLC v. Harris, No. CV 14-03741 DDP MANX, 2014 WL 4988070, at *7 (C.D. Cal. Oct. 7, 2014) ("[A]s the Katzberg court noted, the English common law, by longstanding practice, provided a damages remedy for unlawful searches and seizures . . . Thus it seems quite likely that the framers of the California Constitution expected and intended that violations of § 13 would have had a common law tort remedy."); Camarillo v. City of Maywood, No. CV 07-3469 ODW (SHX), 2008 WL 4056994, at *6 (C.D. Cal. Aug. 27, 2008) ("[F]urther analysis of Katzberg demonstrates the California Supreme Court's implied recognition of a damages claim under Article I, § 13 . . . Thus, Plaintiff's § 13 claim survives."); Smith v. County of Riverside, 2006 U.S. Dist. LEXIS 98213, *21 (C.D. Cal. May 15, 2006) ("Here, the California Supreme Court's implied endorsement of a damages action for a violation of the prohibition against unlawful searches and seizures in Katzberg leads the Court to believe that the California Supreme Court would permit such an action. Accordingly, the Court denies City Defendants' Motion to Dismiss Plaintiff's Claim for damages under Article I, Section Thirteen of the California Constitution.")

In approaching this divisive question, the Court notes first that it must apply the law as it believes the California Supreme Court would apply it. Astaire v. Best Film & Video Corp., 116 F.3d 1297, 1300 (9th Cir. 1997), amended, 136 F.3d 1208 (9th Cir. 1998). In the absence of a California Supreme Court decision on point—as is the case here—it "must predict how the California Supreme Court would decide the issue." Id. However, the discussion in Katzberg addressing the rights flowing to a victim of an illegal search and seizure provides a strong predictor as to how the California Supreme Court would decide this issue: namely, by inferring a right to damages based on the provision's derivation from English common law. Contrary to

Defendants' argument that the dicta in <u>Katzberg</u> is limited to the specifics of New York law, the <u>Katzberg</u> court in fact noted that, in addition to the New York Court of Appeal, the high courts of Maryland and Louisiana had embraced "similar reasoning" to support an action for damages stemming from search and seizure provisions in their state constitutions. 29 Cal. 4th at 323, n.21 & n.22. And the <u>Katzberg</u> discussion also appears to point to a general understanding that, where a state constitution preserves common law, courts may infer the existence of "constitutional torts" based on the remedies historically contemplated by those rights. <u>Id.</u>

Moreover, the Court is persuaded by the discussion in <u>OSJ PEP Tennesse LLC v. Harris</u>, No. CV 14-03741 DDP MANX, 2014 WL 4988070 (C.D. Cal. Oct. 7, 2014), where Judge Pregerson noted that, shortly after the adoption of its Constitution, California affirmed by statute that "[t]he Common Law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of the State of California, shall be the rule of decision in all the Courts of this State." 2014 WL 4988070, at *7 (citing to Cal. Stats. 1850, ch. 95, codified at Cal. Civ.Code § 22.2). As <u>Katzberg</u> noted—and as both Parties concede—the English common law provided a damages remedy for unlawful searches and seizures. 29 Cal. 4th at 322-23. This provision bolsters the inference that the framers of the Constitution intended to incorporate those remedies provided at common law for unlawful searches and seizure. Because the Court thus answers the first prong of the <u>Katzberg</u> analysis in the affirmative, it need not undergo the second part of the analysis to find that Plaintiff can claim damages for a violation of Section 13.

## B.     Whether the Los Angeles County Sheriff's Department and Baca are superfluous defendants

Next, Defendants contend that Plaintiff's Section 1983 claims against Defendant LASD are redundant of his claims against the County, arguing that sub-units of municipal government are not considered separate public entities. (Motion at 8.) In response, Plaintiff notes that he has stipulated that LASD may be dismissed as a defendant on his state law claims; however, he argues that LASD is a proper defendant with regard to his Section 1983 claims because Baca may try to claim that he was the policymaker for LASD but not for the County, thus subjecting the former, but not the latter, to liability. (Opp'n at 25.)

As Defendants point out, Plaintiff's only claims specifically against the LASD are his state law claims: specifically, his Section 13 claim and his false imprisonment claim. The Section 1983 claim in his TAC is asserted only against Baca and the County. Presumably, this is because the Court dismissed Plaintiff's Section 1983 claims against LASD in its October 2013 Order, explaining that Plaintiff had presented no authority demonstrating that a county sheriff could be a final policymaker for the sheriff's department, but not for the county in which the department sits. ("Order," Dkt. No. 46 at 10.) That is, this Court has already rejected precisely the chain of reasoning that Plaintiff attempts to raise again here. In fact, Plaintiff's reliance on <u>Streit v. Cty. of Los Angeles</u>, 236 F.3d 552 (9th Cir. 2001) only reaffirms the Court's decision; there, the Ninth Circuit expressly found that the sheriff could be held liable as a policymaker for the county, not just the department. 236 F.3d at 563. This holding undercuts Plaintiff's argument that there

could be a situation where LASD, but not the County, may be held liable for Baca's actions as policymaker: Streit indicates that a county sheriff may be the policymaker for the county in which the department sits, and Plaintiff has provided no additional authority holding otherwise. Accordingly, *even if* Plaintiff's attempt to re-argue a point already rejected by this Court were procedurally permissible outside of a motion for reconsideration, Plaintiff has not shown that LASD is a necessary party. The Court thus GRANTS Defendants' motion for judgment on the pleadings as to this claim, and STRIKES LASD as a defendant.

### C. Whether the TAC alleges sufficient facts to assert a claim against Baca in his individual capacity

Finally, Defendants contend that Plaintiff has failed to allege sufficient facts to establish an individual capacity claim against Baca. In order to hold a defendant liable as a supervisor under Section 1983, a plaintiff must establish a causal connection between the defendant's conduct and the alleged injury to himself; Defendants argue that Plaintiff's only allegations about Baca are "conclusory, factually devoid, [and] naked assertion[s]." (Motion at 10.) Plaintiff responds by analogizing his allegations to those at issue in Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011), where the Ninth Circuit held that the plaintiff had made "detailed factual allegations" that went "well beyond reciting the elements of a claim of deliberate indifference." 652 F.3d at 1216. Plaintiff also argues that the Ninth Circuit's decision affirming this Court's denial of qualified immunity in this case implicitly held that Plaintiff had stated an individual capacity claim against Baca. (Opp'n at 7-8.)

The Court first rejects Plaintiff's latter argument: the Ninth Circuit's opinion addressed only whether Baca could claim qualified or absolute immunity from Plaintiff's Fourteenth Amendment claim. (Opinion at 8-9.) In determining that Plaintiff had asserted a violation of a right that was clearly established, the court did *not* assess whether the TAC sufficiently established a causal connection between Baca's conduct and Plaintiff's injury, but focused on whether the difference in height and weight between Plaintiff and the person described in the outstanding warrant triggered a duty to investigate his identity. (Id. at 14-16.) In fact, the decision excluded *any* discussion of Baca's role in Plaintiff's detention or endorse the sufficiency of the claims against Baca under a supervisory liability theory. (See generally id.) Accordingly, the Court is not disposed to find for Plaintiff under the theory that the Ninth Circuit has already decided the issue.

As for whether the TAC sufficiently asserts claims against Baca in his individual capacity, the Court examines the standard set in Starr for deliberate indifference claims. There, the Ninth Circuit explained that a defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." F.3d at 1207. Moreover, it noted that "[t]he requisite causal connection can be established" where the plaintiff alleges that the defendant "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Id. at 1207–08 (internal citation and quotation marks omitted).

Applying this standard to the plaintiff's complaint, the Ninth Circuit found that he had met where his burden where he alleged that: Baca was "given notice" of numerous incidents in which inmates in county jails were killed or injured; he was "given notice" of "systematic problems in the county jails under his supervision that have resulted in these deaths and injuries," and that he "did not take action to protect inmates under his care, despite the dangers, created by the actions of his subordinates, of which he had been made aware." 652 F.3d at 1216.

However, the Ninth Circuit also carefully outlined the details bolstering the claims above, citing the following allegations from the complaint:

- The Department of Justice ("DOJ") gave Baca "clear written notice" of "a continued and serious pattern and practices of constitutional violations including abuse of inmates by sheriff's deputies";
- Baca received weekly reports from his subordinates covering deaths and injuries in the jails;
- Baca personally signed a "Memorandum of Understanding" with the DOJ requiring him to address and correct continuous constitutional violations;
- Baca was personally advised of the following non-exhaustive list of incidents:
    - An inmate was severely beaten by a female deputy in his cell, although no one was ever investigated nor disciplined;
    - Deputies knew that Hispanic inmate gangs were planning attacks on African-Americans, yet failed to provide reasonable security;
    - There were five inmate-on-inmate killings the occurred within a six-month period as the result of deputies abandoning their duties or failing to supervise the inmates; and
- Baca received notice from The Special Counsel to the Los Angeles County Sheriff's Department of increasing levels of inmate violence in the jails, including 29 cases involving police misconduct, only eight of which resulted in any type of discipline to the involved officers.

Id. at 1209–11. Under these circumstances, the court concluded that the allegations plausibly suggested that Baca knew of and acquiesced in the conduct of his subordinates. Id. at 1216.

A year later, the Ninth Circuit highlighted the limits of its holding in Starr when it issued its decision in Hydrick v. Hunter, 669 F.3d 937 (9th Cir. 2012). There, it emphasized that Starr relied on detailed factual allegations recounting "specific incidents where Sheriff Baca was on notice of inmate deaths and injuries," finding that, without such detailed allegations, plaintiffs could not proceed on their claims against various individual administrators and state officials. 669 F.3d at 941-42. The court emphasized the absence of "specific allegations regarding each Defendant's purported knowledge" of unreasonable searches and seizures, noting that "[e]ven under a deliberate indifference theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's knowledge of and acquiescence in the unconstitutional conduct of his subordinates." Id. at 942 (internal quotation marks omitted).

Courts in this District have followed <u>Hydrick</u>'s lead, holding that plaintiffs must allege specific incidents during which supervisors were given notice of unconstitutional conduct to proceed on a supervisory liability claim.  <u>See, e.g.</u>, <u>Johnson v. Baca</u>, No. CV1304496MMMAJWX, 2013 WL 12131358, at *9 (C.D. Cal. Sept. 24, 2013) (Unlike the plaintiffs in <u>Starr</u> and <u>Coley</u>, Johnson does not plead sufficient facts showing that Baca acquiesced in deputies' purported deliberate indifference to his serious medical needs . . . Absent such allegations, the complaint fails to plead adequately that Baca knew of and acquiesced in his subordinates' allegedly unconstitutional failure to monitor suicidal detainees adequately or place them in cells where they could not attempt suicide."); <u>Machado v. California Dep't of Corr.</u>, No. CV 13-1703-CAS DFM, 2013 WL 6860613, at *12 (C.D. Cal. Dec. 30, 2013) ("What Plaintiff does allege are facts to support a 'failure to train' theory by a showing of deliberate indifference . . . Notably, however, Plaintiff does not identify how each Supervisory Defendant received such notice [of constitutional violations]. Plaintiff's allegations thus suffer by comparison to the allegations in <u>Starr</u>, where the Ninth Circuit concluded that the plaintiff had stated a claim."); <u>Ramirez v. Cty. of Los Angeles</u>, No. CV 11-5370 AHM MANX, 2012 WL 2574826, at *4 (C.D. Cal. July 3, 2012) ("Neither does Plaintiff allege any specific incident during which Baca was given notice of his subordinates' unconstitutional conduct. Plaintiffs' other allegations are generally conclusory recitals of the elements of a supervisory liability claim.  <u>Hydrick</u> makes clear that without allegations describing specific incidents or policies, these allegations are not enough to survive the <u>Iqbal</u> standard of pleading for a supervisory liability. Thus, Plaintiff's § 1983 claim against Baca is dismissed with leave to amend.)

The allegations at issue in the TAC here are more analogous to those in <u>Hydrick</u> and the Central District cases noted above than those at issue in <u>Starr</u>.  The entirety of Plaintiff's allegations relating to Baca are as follows:

- "Defendant Lee Baca is an individual and the Sheriff of LA County.  As such, he is the chief policymaker for Defendant LASD and is responsible for overseeing and implementing policies and practices followed by personnel in the LASD Data Systems Bureau."  (TAC ¶ 9.)
- "[D]efendant Baca was aware that the LASD was routinely imprisoning innocent people on warrants describing different persons, yet Baca took no steps to remedy the situation.  Plaintiff is further informed and believes and based thereon alleges that it was not until the Los Angeles Times published in December 2011 the number of persons wrongly incarcerated in the LA County jail did Baca bother to take notice of the problem [sic].  Plaintiff is further informed and based thereon alleges that the task force Baca directed to address the problem ignored the primary cause of the wrongful incarcerations, to wit the refusal of LASD personnel to make use of the readily available and reliable official law enforcement identifiers and other information described above."  (TAC ¶ 58.)

The Court agrees with Defendants that these allegations are conclusory.  Unlike in <u>Starr</u>, Plaintiff provides no information about specific incidents during which Baca was given notice of his subordinates' unconstitutional conduct, through reports, firsthand knowledge, or otherwise.

What's more, to the extent that Plaintiff includes any concrete allegations that Baca became aware of wrongful incarcerations—through a 2011 article in the Los Angeles Times—he attests that Baca's response was to direct a task force to address the problem. That the task force was not successful in resolving the problem, without more, does not establish that Baca knew of and acquiesced in ongoing constitutional violations. Accordingly, the Court finds that Plaintiff has not met his burden to state a claim of deliberate indifference against Baca. However, this appears to be the first time that Defendants have challenged Plaintiff's claims on this particular basis, and the Court cannot conclude that the allegation of other facts could not possibly cure the deficiencies discussed here. In light of this, the Court DENIES the motion for judgment on the pleadings, and instead DISMISSES Plaintiff's individual capacity claim against Baca without prejudice. See Butler v. Resurgence Fin., LLC, 521 F. Supp. 2d 1093, 1095 (C.D. Cal. 2007) (judgment on the pleadings is proper *only* where there is no unresolved issue of fact and where it appears beyond doubt that plaintiff can prove no set of facts in support of claim which would entitle him to relief).

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS in Part and DENIES in Part Defendants' Motion for Judgment on the Pleadings. The Court enters judgment against Plaintiff as to his claims against LASD; dismisses Plaintiff's individual capacity claim against Baca with leave to amend; and allows Plaintiff to proceed on his claim for damages under Section 13. Plaintiff may file an amended complaint no later than May 15, 2017.[2] If no amended complaint is filed by that date, the matter will proceed only on the surviving claims.

**IT IS SO ORDERED.**

---

[2] If Plaintiff chooses to file an amended complaint, he should also submit a red-lined copy of the amended complaint to the Court that identifies any changes.